IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHONNA L. BAGGISH,

        Plaintiff,

                              Case No.: 3:11cv315/RV-EMT

vs.

CLEAR WIRELESS, LLC, a foreign
limited liability corporation, F/K/A
CLEARWIRE U.S., LLC,

        Defendant.
_____/

**ORDER**

The plaintiff, Shonna L. Baggish, has brought this action against her former employer, the defendant, Clear Wireless, LLC, alleging that her termination for excessive absenteeism violated the Family Medical Leave Act [29 U.S.C. § 2601, et seq.] ("FMLA"). The parties have had a full opportunity to conduct discovery, and the defendant now moves for summary judgment (doc. 15). The plaintiff has filed a response in opposition.

**I. APPLICABLE LAW**

    A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as matter of law. Fed. R. Civ. P. 56(a), (c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

Summary judgment is improper "[i]f a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Allen v. Board of Public Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-moving party. Id. On summary judgment, the facts must be viewed in the light most favorable to the non-movant. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010).

Employment discrimination cases are fact-intensive, but it is well established that "the summary judgment rule applies in job discrimination cases just as in other cases." Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc); accord Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### B. FMLA

The FMLA allows eligible employees to take twelve weeks of unpaid leave each year for a qualifying medical purpose. See 29 U.S.C. § 2612. The employee may take the leave to treat his own medical condition, or provide care to a family member suffering from such a condition. The stated purpose of the FMLA is to "balance the demands of the workplace with the needs of families." See id. at § 2601(b)(1). Congress sought to accomplish this objective "in a manner that accommodates the legitimate interests of employers." Id. at § 2601(b)(3). To that end, an employee seeking leave under the statute must: i) demonstrate that he (or a family member) has a "serious health condition", and ii) give the employer proper notice of the need for leave. See id. at § 2612. After the employer receives notice

of the need for FMLA leave, the employer may require that the employee verify the need by providing medical certification from a health care provider. See 29 C.F.R. § 825.305(a).

The FMLA allows for two causes of action: interference claims, in which the employee asserts that the employer denied or interfered with his substantive rights under the statute, and retaliation claims, in which the employee asserts that the employer discriminated against him because he engaged in activity protected by the statute. Strickland v. Water Works & Sewer Board of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001). In order to state an interference claim, the employee must "demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Id. at 1206-07. To state a claim for retaliation, the employee must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Id. at 1207. Because the FMLA was not meant to replace "employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events" [Price v. City of Fort Wayne, 117 F.3d 1022, 1023 (7th Cir. 1997)], both interference and retaliation claims are necessarily dependent on the employee (or a family member) having a "serious health condition." Russell v. North Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003) (emphasis supplied).

A "serious health condition" requires that the employee or family member receive: i) inpatient care in a hospital, or ii) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). While the FMLA does not define "continuing treatment by a health care provider," the United States Department of Labor has issued regulations defining that phrase, in relevant part, as a period of incapacity for more than three consecutive calendar days, and any subsequent treatment or period of incapacity related to the same condition that also involves (1) treatment by a health care provider on two or more occasions, or (2) treatment by a health care provider on one occasion that results in a "regimen of continuing treatment

under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(1),(2). The Eleventh Circuit has held that "more than three consecutive calendar days" of incapacity entails a period of 72 hours or more. Russell, supra, 346 F.3d at 1344-45. "Continuing treatment" also includes "examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.113(c). The phrase "serious health condition" is defined objectively, not subjectively. See Russell, supra, 346 F.3d at 1345. "Whether an illness or injury constitutes a serious health condition under the FMLA is a legal question that an employee may not sidestep in the context of summary judgment merely by alleging his condition to be so." Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 499 (7th Cir. 1999).

## II. BACKGROUND

### A. Facts

Except where otherwise noted, the following facts are undisputed.[1]

At the time relevant here, the plaintiff was employed by the defendant, a wireless internet service provider, as an account service specialist and retention representative. She left work on July 2, 2009, and was not scheduled to return until after the July 4th weekend, on July 6th. However, she did not report to work on that date (or in the weeks that followed). The plaintiff contends that her then-eight-year old son Tyler --- who had been diagnosed with a prolapsed heart valve years prior --- had passed out in his second grade class "somewhere around" the

---

[1] The parties spend a large portion of their respective memoranda focusing on the defendant's "point system" attendance policy, whether the plaintiff knew of it, whether it was properly applied, whether it was "evenly and equally" enforced among all employees, and whether the plaintiff timely submitted a FMLA-required certification form for her absences. However, as will be discussed further infra, the legally dispositive issue is simple and straightforward: were the plaintiff's absences due to a "serious health condition"? Because the answer to that question is plainly no, I will discuss the facts of this case briefly, and only to the extent necessary to decide the defendant's motion for summary judgment.

Fourth of July.[2]

At or around this same general time (the record is not clear exactly when), Tyler developed chest pains and had difficulty breathing. The plaintiff thought he may be having a heart attack, so she took him to the emergency room, where he underwent an EKG. The test results did not lead to a definitive diagnosis, however, and Tyler was discharged later that same day and the plaintiff was told to have his pediatrician "read over everything."

The plaintiff has testified that she needed time off from work because she was Tyler's primary care giver, and, "as [his] mother, I want[ed] to be there for my child." She needed "to make sure that he was taken care of" and "make sure he's as comfortable as possible. Make sure he's not under any stress." If he ever got sick or dizzy, she wanted to be there to "hold his head up"; give him "Tylenol, Motrin"; "make sure that he had a cool cloth"; and "put him in bed." When asked how often she had to perform these duties, the plaintiff replied "it was sporadic," possibly once a week.

Tyler saw two doctors during this period of time. The first, Dr. Mehta, was a heart specialist, and she found nothing wrong with Tyler's heart. In fact, according to the plaintiff, Dr. Mehta "said [Tyler's] heart was good" and he only needed "to come back at least once a year or so to have him rechecked." Dr. Van Ostenbridge, the second doctor who saw Tyler, ordered some additional tests and "basically just [gave] checkups." Significantly, a note in Dr. Van Ostenbridge's medical file, <u>dated July 30, 2009</u> --- written in response to plaintiff's request for FMLA certification --- states that: "[F]rom what I can tell there is no need for mom to be missing work to care for child. Perhaps the initial 8 days for the [chest pain] to resolve is excusable, but extended care does not appear to be necessary."

---

[2] The defendant has attached the school's 2009 calendar as an exhibit to its motion for summary judgment. It reflects that the school term ended that year one month prior, on June 4, 2009. The plaintiff has made no attempt to respond to this factual inconsistency in her response in opposition to the defendant's motion.

*Case No.: 3:11cv315/RV-EMT*

Almost two weeks later, on August 10, 2009 --- which was more than one month after the plaintiff had last worked --- Clear Wireless's manager of retention, Kim Camacho, and her supervisor, Regina Galarsa, called the plaintiff and asked when she planned to return to work. Because the doctors did not have a definitive diagnosis of Tyler's condition at that time, the plaintiff told them "I don't have an exact date. And then Kim says, well, then we're just going to have to let you go if you can't give me an exact date." The plaintiff was terminated at that time. A few weeks <u>after</u> she was fired, Dr. Van Ostenbridge finally diagnosed Tyler's condition as "a little bit of anxiety" and heartburn. The plaintiff has testified that "chewable Rolaids . . . seemed to calm it down quite a bit."

### B. Claims and Arguments

In her two-count complaint, the plaintiff has asserted both FMLA interference and retaliation claims. The defendant moves for summary judgment on the grounds that: 1) the plaintiff did not provide timely certification from Tyler's doctor attesting to the need for FMLA leave; 2) Tyler did not have a "serious health condition"; and 3) the plaintiff was lawfully terminated for excessive accumulation of points under the defendant's attendance policy. The plaintiff argues in response that: 1) she did "all that was practical" to get the FMLA certification forms to the defendant, but the medical provider did not complete his evaluation in time; 2) while it may have ultimately turned out that Tyler did not have a "serious health condition," she was entitled to FMLA leave while his doctors were still trying "to determine whether he suffered a serious health condition"; and 3) the attendance policy/point system "is a sham . . . [that is] not applied evenly or equally to all employees subjected to it."

## III. DISCUSSION

As indicated in footnote 1, <u>supra</u>, the threshold and legally dispositive issue in this case is whether Tyler suffered from a serious health condition. If he did not, then summary judgment in favor of defendant is appropriate as both the retaliation and interference claims must fail as a matter of law. See <u>Russell</u>, <u>supra</u>, 346 F.3d

at 1340 ("Interference and retaliation claims both require the employee to establish a 'serious health condition'").

In the absence of overnight care in a hospital --- and there was none here --- a "serious health condition" is an illness or condition that results in incapacity for more than three, full consecutive calendar days and requires "continuing treatment" by a health care provider. It is clear and manifest that Tyler's "little bit of anxiety" and heartburn do not qualify as a "serious health condition" as there is no evidence that he was incapacitated for more than 72 consecutive hours. In fact, the plaintiff has testified that she had to provide care (e.g., by making him comfortable, giving him Tylenol or Motrin, holding his head, and applying a cool cloth before he went to sleep) only "sporadically," maybe once a week. Otherwise, he appeared to be doing fine. The plaintiff impliedly conceded during her deposition that someone else could have watched and cared for him during this period, "but as [his] mother, I want[ed] to be there for my child." While that is certainly understandable, it does not a "serious health condition" make.

The legislative history of the FMLA provides examples of the sort of ailments that Congress intended the statute to cover:

> Examples of serious health conditions include but are not limited to heart attacks, heart conditions requiring heart bypass of [sic] valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, [and] injuries caused by serious accidents on or off the job. . . . All of these conditions meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a recurring basis or for more than a few days for treatment or recovery. They also involve either inpatient care or continuing treatment or supervision by a health care provider, and frequently involve both.

*Case No.: 3:11cv315/RV-EMT*

Miller v. AT&T Corp., 250 F.3d 820, 834-35 (4th Cir. 2001) (quoting S. Rep. No. 103-3, at 28-29). Tyler's anxiety and heartburn (for which he took antacid tablets and showed improvement) is simply not a "serious health condition." See Seidle v. Provident Mut. Life Ins. Co., 871 F. Supp. 238, 242 (E.D. Pa. 1994) (recognizing that although the list of ailments in the FMLA legislative history is not exhaustive, child's ear infection was not "serious health condition" as it was "[c]onspicuously absent from" and "not as severe as" the ailments that were listed); see also 29 C.F.R. § 825.113(c) ("regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest [and antacids] . . . is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave").

      The plaintiff does not really dispute the foregoing as she does not appear to contend that Tyler's anxiety and heartburn constituted a "serious health condition." Rather, she argues that she was entitled to FMLA leave while the doctors were still in the process of trying to definitively diagnose his condition and ascertain if it was a "serious health condition." The regulations do, indeed, provide that "continuing treatment" can include "examinations to determine if a serious health condition exists and evaluations of the condition." See 29 C.F.R. § 825.113(c). However, "examinations and evaluations concerning 'serious health conditions' implicate the FMLA only to the extent their importance, duration and frequency require absence from work." See Martyszenko v. Safeway, Inc., 120 F.3d 120, 123 (8th Cir. 1997). The problem for the plaintiff is she has not pointed to any evidence in the record that Tyler's doctors were conducting such examinations --- particularly not toward the end of her five-week absence from work. Quite to the contrary, Dr. Mehta told the plaintiff that Tyler's heart was "good" and that he only needed to come back for a yearly check-up, while Dr. Van Ostenbridge's file reveals that, as of July 30th, "there is no need for mom to be missing work to care for child . . . [as] extended care does not appear to be necessary." And yet, the plaintiff told her supervisors

almost two weeks later, on August 10th, that she was unable to tell them when she would be willing and able to return to work. Summary judgment must be granted in favor of defendant as Tyler's medical condition was at that time --- if not sooner --- objectively not a "serious health condition." See Williams v. City of Plantation, Fla., 2008 WL 4821757, at *5 (S.D. Fla. 2008) (minor child of employee did not have a "serious health condition," and thus summary judgment was appropriate, where the medical record was "contrary to Plaintiff's position," i.e., the doctor who examined the child stated that he "'would not describe the child's illness as a serious medical condition'").

## IV. CONCLUSION

The defendant's motion for summary judgment (doc. 15) is GRANTED. The Clerk is hereby directed to enter judgment in favor of the defendant, together with taxable costs, and close this case.

**DONE and ORDERED this 16th day of August, 2012.**

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge